UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:09CV-00092-JHM

NICHOLE CHAPMAN                                                                                  PLAINTIFF

vs.

WILLIAM KNIGHT, JR., Individually and in his
official capacity as Jailer, Adair County, Kentucky;
ANN MELTON, Individually and in her official capacity
as Judge Executive, Adair County, Kentucky; ADAIR
COUNTY, KENTUCKY                                                                              DEFENDANTS

vs.

SOUTHERN HEALTH PARTNERS, INC.                      INTERVENING DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Jailer William Knight, Judge Executive Ann Melton, Adair County, Kentucky, and Southern Health Partners, for summary judgment [DN 17] and on a motion by Plaintiff, Nichole Chapman, for summary judgment [DN 24]. For the reasons set forth below, the motion by Defendants for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

## I. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the

non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Nichole Chapman, brings this action pursuant to 42 U.S.C. § 1983[1] alleging that the Defendants violated her rights under the Eighth Amendment to the Constitution of the United States by acting with deliberate indifference to her serious medical needs. Chapman is a former inmate at the Adair County Regional Jail. She was incarcerated at the Adair County Regional Jail from July 13, 2008, through September 22, 2008. (Complaint at ¶ 14.) Southern Health Partners through a contract with the Adair County Regional Jail provides medical services to inmates of the Jail. On August 12, 2008, Chapman was examined by a nurse after complaining of "bug bites."

---

[1] Title 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

2

(Progress Notes Exhibit 17-11.) The Progress Notes reflect that the nurse, Rhonda Neat, observed no signs of infection from any of the bites. Further, the Progress Notes indicate that Jailer William Knight instructed Deputy Jailer Judy Derman to have the entire cell "cleaned bleached and germicide to be used on mats" and ordered clean bedding and clothing be issued to all inmates in Cell 142. (Id.) On August 13, 2008, Plaintiff wrote a letter to Jailer Knight informing him that she and other inmates were being bitten by bugs. (August 13, 2008, Letter.) As a result of the letter, the female prisoners were removed from the cell and showered. (Id.; Progress Notes 8/13/08.) In response, Jailer Knight also instructed the guards to "[r]eclean the cell[,] wash it down with bleach[,] spray mats with disinfect[ant] and shower all women with Lindane." (Id.) Jail staff once again issued clean linens and clothing to the inmates housed in Cell 142. (Medical Progress Notes, 8/13/08.)

On August 18, 2008, Chapman wrote another letter complaining of bug bites. (August 18, 2008, letter.) Jailer Knight instructed Chapman to be taken to the nurse. (Progress Notes 8/18/08.) The nurse observed small raised clustered areas on the Chapman's skin. (Id.) As treatment, the nurse prescribed Chapman hydrocortisone cream and the jail staff provided Chapman with clean clothes and linens. (Id.) In response to the letter, Jailer Knight issued Chapman a different matt and provided germicide to clean her own mats and area. The jail staff issued clean linens and clothes to the other inmates in Cell 142. (Id.) On August 20, 2008, jail staff brought Chapman to the nurse for a follow-up appointment to discuss the condition of the "bug bites." (Progress Notes 8/20/08.) Chapman stated that the bites were getting better and drying up. The nurse examined Chapman and observed that the areas were drying up. The nurse provided Chapman calamine lotion in the event that the itching returned. (Id.)

3

On August 27, 2008, Chapman once again complained of bug bites. The nurse examined Chapman and prescribed Benadryl and permethrin cream 5%. Chapman showered, received all new clothing, and was placed in isolation. The nurse instructed her to bring nothing from her cell. (Progress Notes 8/27/08). On August 29, 2008, Chapman reported that she had received no new bug bites and was moved out of isolation. Guards were instructed by Jailer Knight to monitor Chapman's condition. (Progress Notes 8/29/08.)

In a letter written September 2, 2008, Chapman and other inmates stated that they were grateful for Jailer Knight's attention to the bug problem but expressed concern that they would have to forfeit a visit with family in order to be treated for the bug problem. After receiving a letter from the inmates, Jailer Knight spoke with some of the female inmates regarding the alleged bug problem. (Knight's Notes 9/2/10.) Two of the three inmates stated that they did not think there were bugs in the cell. In fact, one of the inmates questioned indicated that Chapman was fabricating the bug situation. Id. On September 3, 2008, Chapman wrote Jailer Knight to "thank [him] for his immediate attention to [the Plaintiff's] last letter." (Chapman Letter 9/3/08.) In that letter, Chapman along with other inmates requested the mats be replaced to avoid infestation by mites or pests. (Id.) On that same date, jail staff provided Chapman a shower, cream to apply to her body, and clean clothes and linens. Jail staff once again cleaned and bleached Plaintiff's cell and sprayed the mats. The nurse issued follow-up instructions to the guards to provide Plaintiff with another shower and clean clothes and linens the following day. (Progress Notes 9/3/08.)

On September 4, 2008, Chapman developed a boil on her buttocks. (Inmate Sick Call Slip – Medical Request, 9/8/08.) On September 8, 2008, Chapman filled out a medical request form. (Id.) On that same day, Plaintiff was seen by the nurse for the boil which was subsequently cleaned,

4

dried, and taped. (Id.) The medical records indicate that the boil was hot to the touch, hard, and Chapman had difficulty sitting. The nurse prescribed doxycycline, Bactrim, and ibuprofen 800 mg to Chapman and instructed the jail staff to place her in isolation. (Id.) When informed that she would have to be placed in an isolation cell, Chapman became angry, uncooperative, and belligerent. (Id.)

On September 10, 2008, Chapman sent a letter to Jailer Knight asking why she had been placed into isolation. (Chapman Letter, 9/10/08.) Jailer Knight responded that same day stating that Chapman was in isolation due to her medical condition. (Knight Letter, 9/10/08.) On September 11, 2008, Chapman wrote to Jailer Knight requesting she be reevaluated by a doctor, stating her medical care was poor because her dressings were small and not changed enough, and that the wound continued to drain. Id. That same day, Jailer Knight responded to Plaintiff that he had given instruction to all guards to follow the medical staffs' orders in regards to medical issues. Id. On September 11, 2008, supervising physician Dr. G. Eugerio reviewed Chapman's medical history and records, reviewed the Plaintiff's treatment with the nurse, and approved of the treatment plan. (Progress Report 9/11/08.) On September 15, 2008, medical staff released Chapman from isolation due to the improvement of the boil and placed her in a different general population cell. (Progress Notes 9/15/08.) The record further reflects that the medical staff measured Chapman's wound, observed its color consistency and amount of odor, examined surrounding tissue, verified the patient was receiving medication, noted how many dressing changes per day she received, and noted her pain level over the next ten days. (Wound Care Flow Sheet – Medical, 9/8/08 - 9/11/08; 9/15/08; 9/17/08; 9/18/08.) Chapman continued to receive treatment for the boil until her transfer. Id.

As a result of Defendants' treatment of Plaintiff, Chapman filed suit in July of 2009. The

Defendants now move for summary judgment arguing that (1) sovereign immunity bars claims against Defendants Adair County, Judge Executive Ann Melton, and Jailer William Knight in their official capacities; (2) the Defendants in their official capacities are not "persons" under § 1983; (3) Plaintiff failed to exhaust her administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (4) the facts presented do not support a valid Eighth Amendment claim because the Defendants were not deliberately indifferent to Plaintiff's living conditions or medical needs; and (5) a deliberate indifference claim against the individual Defendants fail because such a claim cannot be based on respondeat superior or vicarious liability.

### III. DISCUSSION

**A. Sovereign Immunity**

Defendants argue that the § 1983 claims against Adair County and Melton and Knight in their official capacity are claims against the Commonwealth, and as such, are barred by the doctrine of sovereign immunity. Contrary to Defendants' argument, Defendants are not arms of the state entitled to Eleventh Amendment immunity. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, in this case, the official capacity claim against Melton and Knight is actually a claim against the municipality, Adair County. Stemler v. City of Florence, 126 F.3d 856, 864 n. 8 (6th Cir.1997); Rothhaupt v. Maiden, 144 Fed. Appx. 465 (6th Cir. July 20, 2005). "The bar of the Eleventh Amendment to suit in Federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations." Alkire v. Irving, 330 F.3d 802, 811 (6th Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. Of Educ., 429 U.S.

at 280); see also Northern Ins. Co. of New York v. Chatham County, Ga.. 547 U.S. 189, 193-94 (2006)(noting that "this Court has repeatedly refused to extend sovereign immunity to counties" and that "municipalities, unlike [s]tates, do not enjoy a constitutionally protected immunity from suit"). Therefore, these Defendants are not protected from Plaintiff's §1983 action by sovereign immunity.

### B. "Persons" under § 1983

Defendants, Adair County and Melton and Knight in their official capacities, further argue that the claims against them should be dismissed because a state, its agencies, and its officials are not "persons" subject to suit under § 1983. As discussed above, the official capacity claim against Melton and Knight is actually a claim against the municipality, Adair County. The Supreme Court has clearly stated that a municipality is a "person" liable to suit under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). Thus, contrary to Defendants' argument, Adair County is a "person" subject to suit under § 1983.

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be proved by the defendant. Jones v. Bock, 549 U.S. 199, 212 (2007). Defendants argue that the PLRA bars Chapman's claims because Chapman failed to exhaust her administrative remedies.

Defendants' reliance on the PLRA is misplaced given that it appears that Chapman was no longer a "prisoner" when she filed suit in July of 2009. (See Defendants' Motion for Summary

7

Judgment at 1; Complaint at ¶ 14.) The Adair County Regional Jail transferred Plaintiff to Casey County Jail on September 22, 2008. (Progress Notes 9/22/08). Chapman filed her complaint on July 10, 2009. Nothing in the record reflects that Chapman was a prisoner at any facility at the time she filed her Complaint. By the terms of the PLRA and given the current record before the Court, the PLRA does not require Chapman to exhaust her administrative remedies before filing this lawsuit because she was not a "prisoner" when she filed this lawsuit. See Hall v. Letcher County Fiscal Court, 2009 WL 4729953, *3 (E.D. Ky. December 9, 2009)(citing Norton v. City of Marietta, OK, 432 F.3d 1145, 1150 (10th Cir. 2005) ("[O]ther circuits have concluded that a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit."); Sutton v. Hopkins County, Ky., 2005 WL 3478152, *2-*3 (W.D. Ky. December 19, 2005). Accordingly, Defendants' motion for summary judgment on this ground is denied.

**D. Eighth Amendment**

Defendants next argue that the facts of the case do not support an Eighth Amendment claim. Chapman contends that Jailer Knight and the medical staff provided by Southern Health Partners were deliberately indifferent to her serious medical needs because they were aware of the insect infestation in her cell and of the bug bites received by Plaintiff, but did not adequately respond to the infestation and did not provide her with proper medical treatment for the bug bites. Chapman has made essentially two claims: first, that her conditions of confinement violated the Constitution and, second, that Defendants were deliberately indifferent to her serious medical needs.

*1. Conditions of Confinement*

Chapman alleges that the existence of bed bugs or similar insects in her cell violated the

Eighth Amendment. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In order to state a valid conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 297-99 (1991) (citation omitted). See also Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006).

While some courts have found that "[p]rolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation," Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008), the conditions described by Chapman fall far short of a denial of the minimal civilized measure of life's necessities. See Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegation of "sixteen months of infestation and significant physical harm" stated claim for inhuman conditions of confinement). Although the existence of bed bugs in a cell for a short period of time would certainly be unpleasant, a reasonable jury could not conclude that the conditions in Cell 142 were objectively serious enough to establish a constitutional violation.

Even if the conditions of confinement of Chapman in this case were found to be unreasonable as a matter of law, Chapman cannot survive summary judgment on this claim because she failed to demonstrate that Defendants acted or failed to act with the requisite deliberate inference. "The deliberate-indifference requirement is satisfied 'only if [the official] knows that

9

inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Spencer, 449 F.3d at 729 (quoting Farmer, 511 U.S. at 847).

The record belies Chapman's claim of deliberate indifference on the part of Defendants. Several letters by Chapman to Jailer Knight thank him for his "immediate attention" and "for checking in on [her]" in response to her letters. (DN 17, Exhibit E, Exhibit F). Each time Plaintiff complained of bug bites, Jailer Knight promptly responded by having her seen by the nurse. On several occasions, Jailer Knight instructed that Chapman and other inmates be showered, that cell 142 and the mats be cleaned with bleach and germicide, and issued Chapman and other inmates clean clothing and linens on a regular and consistent basis. In fact, Jailer Knight provided Chapman a new matt in response to her second letter to him. Additionally, medical staff removed Chapman from cell 142 and placed Chapman in isolation twice for her medical condition. Ultimately, Chapman was permanently removed from cell 142 and placed in a different cell. Thus, while Plaintiff claims that the steps taken by Jailer Knight were not effective in eliminating the bed bugs, the record demonstrates that reasonable steps were taken in response to Plaintiff's complaint of bed bugs in her cell. Because nothing in the record before us suggests that Defendants exhibited deliberate indifference to Plaintiff's living conditions, summary judgment on this claim is granted.

*2. Medical Condition*

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976); see also Harrison v. Ash, 539 F.3d 510, 517 (6th Cir. 2008). To establish that a prison official was deliberately indifferent to an inmate's serious medical needs and therefore establish that the prison official violated the inmate's constitutionally protected right, the plaintiff must satisfy two elements. See

Comstock v. McCrary, 273 F.3d 693, 702-03 (6th Cir. 2001). The first element is an objective element, which requires a plaintiff to show that the inmate's medical needs were "sufficiently serious." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The second element is a subjective element, which requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. at 703 (citing Farmer, 511 U.S. at 837). "The subjective component requires a showing that prison officials acted with 'a sufficiently culpable state of mind in denying medical care,' i.e., 'a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Robbins v. Black, 351 Fed. Appx. 58, 62 (6th Cir. Nov. 2, 2009)(quoting Miller v. Calhoun County, 408 F.3d 803, 813 (6th Cir. 2005)).

When prison officials provide medical care in good faith but they nonetheless fail to promptly or completely restore the prisoner to good health, those officials are not "deliberately indifferent" to the prisoner's health. Holmes v. Sheahan, 930 F.2d 1196, 1199 (7th Cir. 1991). If the prisoner, or even another doctor, disagrees with the treatment provided, so long as it meets minimal standards of adequacy, a mere disagreement over medical judgment states no constitutional claim. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir.1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment." (citation omitted)). A claim that medical treatment was inadequate may present a viable medical malpractice claim under state tort law, but it does not state a constitutional claim. Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004); Estelle, 429 U.S. at 106 ("Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Here, Plaintiff argues that the Defendants were deliberately indifferent to her serious medical needs by allegedly denying her medical care and failing to properly treat her bug bites and boil. Having reviewed Chapman's medical records and progress notes, the Court finds that no reasonable jury could conclude that Defendants violated Chapman's Eighth Amendment rights by denying her medical care. The record reflects that the Defendants provided Chapman with extensive medical attention. Each time Plaintiff complained of bug bites, Jailer Knight promptly responded by having her seen by the nurse. On different occasions, the nurse prescribed hydrocortisone cream, Benadryl, permethrin cream, and/or calamine lotion. When Chapman developed the boil, the medical staff treated her with doxycycline, Bactrim, and ibuprofen 800 mg, placed her in isolation, and monitored the boil's size, color, odor, surrounding tissue, number of dressing changes, and pain level. Additionally, the supervising doctor reviewed and approved of Chapman's course of treatment of the boil. While Chapman complains that her placement in isolation twice during this time period was punishment for her complaints of bed bugs, the record reflects that she was placed in isolation due to her medical condition. Finally, Defendants tendered an affidavit of Dr. Ronald Waldridge, a family medicine physician who routinely treats inmates, who avers that Southern Health Partners and Jailer Knight exercised the appropriate standard of care in providing medication and treatment to Chapman. (Waldridge Affidavit at ¶ 1.) While Chapman might not have received all the care she desired, there has been no showing by her that her care was neglected to a level that would violate the Constitution. See Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) ("[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") Accordingly, the Court concludes that there is no evidence upon which a

jury could reasonably find that Defendants were deliberately indifferent to Chapman's serious medical needs by denying her medical care or by failing to provide "proper" medical treatment. Defendants are entitled to summary judgment on Chapman's Eighth Amendment claims against them.

As the Court has determined that the Defendants are entitled to summary judgment on Chapman's claims against them, the Court will deny Chapman's newly filed cross-motion for summary judgment on these claims.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [DN 17] is **GRANTED** and Plaintiff's motion for summary judgment [DN 24] is **DENIED**. A Judgment will be entered consistent with this Opinion.

cc: counsel of record